UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ANDREW J. MUMA,                                    Case No. 09-48373
            Debtor.                                Chapter 7
                                                   Hon. Walter Shapero
_____/

HUDSON & MUMA, INC.,

            Plaintiff,

v.                                                 Adv. No.  09-05227

ANDREW J. MUMA,

            Defendant.
_____/

### OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

        The matters before the Court are Defendant/Debtor's Motion for Summary Judgment and
Plaintiff's Counter-Motion for Summary Judgment. For the reasons set forth below, both
motions are denied.


### BACKGROUND


        Andrew Muma ("Debtor") filed a Chapter 7 bankruptcy petition on March 20, 2009.
Hudson & Muma, Inc. (Hudson & Muma) holds a judgment against the Debtor in the amount of
$487,323.82.  On June 29, 2009, Hudson & Muma filed this adversary proceeding seeking that
the judgment debt owed to it be excepted from the discharge under 11 U.S.C. §§ 523(a)(2)(A),
523(a)(4), and 523(a)(6).  Debtor filed his Motion for Summary Judgment on January 6, 2010
and Hudson & Muma filed its Motion for Summary Judgment on January 20, 2010.

        In September 2005, Hudson & Muma filed a complaint in the Oakland County Circuit
Court, Case. No. 05-068924-NZ ("State Court Case").  In its amended complaint, Hudson &

1

Muma plead numerous legal theories, including: (1) Injunctive Relief, (2) Misappropriation of Trade Secrets, (3) Conversion, (4) Tortious Interference with Contractual and Business Relationship and Economic Expectations, (5) Breach of Fiduciary Duty, (6) Fraud, (7) Breach of Contract, (8) Unjust Enrichment, and (9) Accounting.

The facts giving rise to the state court action and this adversary proceeding are based on a business relationship between the Debtor and Hudson & Muma. Hudson & Muma is a family owned insurance agency that writes both commercial insurance and individual insurance policies. Upon the death of the founder and patriarch of the Muma family, the children took over the business. Debtor, one of five children, was a one-fifth owner/shareholder, director, officer, and sales representative of Hudson & Muma. At all relevant times, Debtor was the treasurer of Hudson & Muma. Debtor resigned from all of his positions with Hudson & Muma in 2005.

Apparently, between 1993 and 2005, Debtor converted return premium checks totaling approximately $190,000. Debtor failed to return premium money to the insured in violation of Sections 1207(1) and (2), 1239(1)(b), (d), and (h) of the Michigan Insurance Code, M.C.L. § 500.100 et seq. Debtor entered into a Consent Order and Stipulation with the State of Michigan Department of Labor and Economic Growth requiring him to make restitution in the amount of $190,000 for all persons owed return premium money and to pay a civil fine of $10,000. Debtor was ordered to complete the restitution process within 48 months of the entry of the Order. Hudson & Muma alleges that, as of June 29, 2009, Debtor had not completed his restitution payments. Hudson & Muma claims that, because of the Consent Order, it did not request a determination of liability or seek damages as a result of the converted return premium checks in the state court action.

In the state court action, Hudson & Muma alleged that Debtor had misappropriated trade secrets and proprietary information between 2002 and 2005. It further alleged that Debtor established a business relationship with another competing insurance agency and stole client accounts after leaving Hudson & Muma in 2005.

Hudson & Muma's claims were tried before a jury, which gave its verdict on February 11, 2008. The jury determined that Debtor misappropriated trade secrets owned by Hudson & Muma and that Debtor received a benefit at the expense of Hudson & Muma. The jury did not find Debtor liable on the claims of Conversion, Tortious Interference, Breach of Fiduciary Duty,

2

Fraud, or Breach of Contract. After various post-judgment motions, the State Court entered its final judgment on the verdict in favor of Hudson & Muma and against Debtor for $487,323.82.

## DISCUSSION

### Summary Judgment Standard

> Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.

*United States v. Certain Real Prop.* 800 F.Supp. 547, 549-50 (E.D. Mich. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 447 U.S. 317, 323-24 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). Once the moving party satisfies its burden, the non-moving party must then "come forward with 'specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

Here, the Debtor and Hudson & Muma have filed cross-motions for summary judgment. "The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948). But, "[a]t the same time, 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.'" *Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000) (*quoting Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)).

### Collateral Estoppel

3

The principles of collateral estoppel are applicable in non-dischargeability proceedings before the Bankruptcy Court. *See Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 318-19 (6th Cir. 1997) (*citing Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991)). The framework for dealing with collateral estoppel issues in this context was summarized as follows:

> In recent years, the Supreme Court has issued a series of decisions expanding the analysis that the federal courts must use to determine whether to give a state judgment preclusive effect. Rather that relying solely on the judicial doctrine of collateral estoppel, a federal court must first consider whether the Full Faith and Credit Act requires it to accord the state judgment the same preclusive effect that the judgment would receive under state law.
>
> The Full Faith and Credit Act states, in relevant part, that state court "judicial proceedings shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."
>
> The Sixth Circuit has held that the Full Faith and Credit Act applies in dischargeability proceedings . . . [T]he bankruptcy court must initially determine whether a state court judgment would receive preclusive effect in the state where it was rendered. If so, the bankruptcy court must give the state court judgment preclusive effect unless it determines that an exception to the Full Faith and Credit Act exists.

*Cresap v. Waldorf (In re Waldorf)*, 206 B.R. 858, 862 (Bankr. E.D. Mich. 1997) (*quoting* 28 U.S.C. § 1738) (citations omitted).

In this case, the judgment at issue was granted by a Michigan State Court. Accordingly, this Court looks to Michigan law to determine whether the judgment has preclusive effect.

Michigan Courts apply collateral estoppel "to avoid re-litigation of claims, and to prevent vexation, confusion, chaos, and the inefficient use of judicial resources." *Board of County Road Commissioners v. Schultz*, 521 N.W.2d 847, 851 (Mich. Ct. App. 1994) (citations omitted). The Michigan Supreme Court has explained Michigan's rule of collateral estoppel as follows:

> Collateral estoppel precludes re-litigation of an issue in a subsequent, different cause of action between the parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined.

*People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990) (footnote and citations omitted).

Section 523(a)(2)(A) provides:

> A discharge under section 727, 1141, 1228(a), or 1328(b) of this
> title does not discharge an individual debtor from any debt . . . for
> money, property, services, or an extension, renewal, or refinancing
> of credit, to the extent obtained by . . . false pretenses, a false
> representation, or actual fraud, other than a statement respecting
> the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). The Sixth Circuit Court of Appeals has articulated the following

requirements in order for a creditor to prevail in demonstrating an exception to discharge under

11 U.S.C. § 523(a)(2)(A):

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove
> the following elements: (1) the debtor obtained money through a material
> misrepresentation that, at the time, the debtor knew was false or made with gross
> recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the
> creditor justifiably relied on the false representation; and (4) its reliance was the
> proximate cause of loss.

*Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir.

1998) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993); *Grogan v.

Garner*, 498 U.S. 279, 291 (1991); *Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857

F.2d 1082, 1083 (6th Cir. 1988)) (footnote omitted). In order to except a debt from discharge

under § 523(a)(2)(A), the creditor must prove several elements, each of which is virtually

identical to Hudson & Muma's state court fraud claim.

The Debtor asserts that all of the elements of § 523(a)(2)(A) have already been

adjudicated by the state court when it decided Hudson & Muma's fraud claim. Debtor

argues that, because the jury specifically determined that Debtor did not make a

representation of material fact or fail to disclose a material fact, Hudson & Muma is

collaterally estopped from re-litigating that element in this Court. Hudson & Muma

argues that the standard of proof used by the state court in determining Hudson &

Muma's fraud claim was different than the standard of proof necessary to except a debt

from discharge under § 523(a)(2)(A). In its instructions to the jury, the state court stated

that the jury must find the elements of fraud by "clear and convincing evidence." The

standard of proof necessary to except a debt from discharge is "preponderance of the evidence." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The jury in the state court action applied a "clear and convincing evidence" standard when it determined that the Debtor did not make a misrepresentation to Hudson & Muma; however, that standard is higher than the "preponderance of the evidence" standard that is applied in non-dischargeability actions in this Court. Failure by Hudson & Muma to meet the heightened "clear and convincing evidence" standard does not necessarily equate to a conclusion that the evidence also failed to meet the lesser "preponderance of the evidence" standard required for a claim under § 523(a)(2)(A). *See In re Painter*, 285 B.R. 669, 675 (Bankr. S.D. Ohio 2002); *Thangavelu v. Dep't of Licensing & Regulation*, 149 Mich. App. 546, 555, 386 N.W.2d 584 (1986) (finding that a judgment of acquittal in a criminal case, where the standard of proof is beyond a reasonably doubt, does not foreclose the relitigation of the same issue in a civil proceeding where the lower preponderance of the evidence standard is applicable). Thus, the state court's underlying judgment does not lend itself to granting Debtor's Motion for Summary Judgment on the basis of collateral estoppel. Therefore, Debtor's Motion for Summary Judgment is denied on this count.

<u>11 U.S.C. § 523(a)(4)</u>

11 U.S.C. § 523(a)(4) excepts from the discharge a debtor for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. Although it is not entirely clear from the pleadings, it appears that Hudson & Muma is claiming that Debtor committed fraud while acting in a fiduciary capacity, embezzlement, and larceny.

Debtor asserts that the elements of § 523(a)(4) have already been adjudicated by the state court when it decided Hudson & Muma's fraud claim since the claims of fraud while acting in a fiduciary capacity, embezzlement, and larceny each contain a fraud element. Debtor argues that, because the jury specifically determined that Debtor did not commit fraud, Hudson & Muma is collaterally estopped from re-litigating that element in this Court. Once again, Hudson & Muma argues that the standard of proof used by the state court in determining Hudson & Muma's fraud claim is different than the standard of proof necessary to except a debt from discharge under § 523(a)(4). For the reasons

6

articulated above, the state court's underlying judgment does not lend itself to granting Debtor's Motion for Summary Judgment on the basis of collateral estoppel; thus, it is denied on this count.

<u>11 U.S.C. § 523(a)(6)</u>

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The elements of nondischargeability under §523(a)(6) are (1) desire to cause the consequences of the act or belief that the consequences are substantially certain to result; and (2) no just cause or excuse. *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 580 (6th Cir. 2001) (citations omitted).

Nondischargeability under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998). "[U]nless 'the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th 1999) (*quoting* Restatement (Second) of Torts § 8A, at 15 (1964)). The second component of § 523(a)(6), that the injury be malicious, "means in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986).

"An act of conversion may constitute willful and malicious injury depending on whether or not the debtor intended to cause the harm or was substantially certain that such harm would occur." *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

In his Motion for Summary Judgment, Debtor asserts that he did not intend to harm Hudson & Muma. Debtor relies on (1) his own affidavit, which states that he neither intended to harm Hudson & Muma, nor acted without just cause or excuse; (2) the state court jury's finding as to Hudson & Muma's Tortious Interference claim that he did not intentionally and improperly interfere with a contractual and/or business relationship; and (3) the state court jury's finding as to Hudson & Muma's Conversion claim that he did not wrongfully exercise or assume authority over Hudson & Muma's property such

7

that it permanently or indefinitely deprived it of the possession of that property. In its Motion for Summary Judgment, Hudson & Muma argues that the state court jury's finding that Debtor misappropriated trade secrets fulfills the requirements of § 523(a)(6).

In the state court case, the Judge instructed the jury regarding the Misappropriation of Trade Secrets claim as follows:

> When one obtains a trade secret because of a relationship of confidence or through his employment, he is not permitted to make use of such secret for his own benefit or to disclose it to others without the consent of the original possessor of the secret. Your verdict will be for the Plaintiff on the claim of misappropriation of trade secrets if you decide that the Plaintiff has proved that Defendant Andrew Muma attained trade secrets because of his relationship of confidence with the Plaintiff and made use of such secrets for its own benefit or disclosed such secrets without Plaintiff's consent.

The Judge defined "misappropriation" as follows:

> Misappropriation is defined as either of the following: Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means. Two, disclosure or use of the trade secret of another without expressed or implied consent by a person who did one or more of the following: Used improper means to acquire the knowledge of the trade secret; and B, at the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it - - acquire it under the circumstances giving rise to a duty to maintain in secrecy, or limit its use or derive from or through a person who owed a duty to the person to maintain secrecy, or limit its use, or before a material change of his or her position know or had reason t know that it was a trade secret, and that the knowledge of it had been acquired by accident or mistake.

Debtor argues that, based on those jury instructions, the jury could have found him liable for misappropriation of trade secrets simply because he attained the trade secrets because of his relationship of confidence with Hudson & Muma, and because he made use of those trade secrets (or disclosed them) without Hudson & Muma's consent. He argues, if that was indeed the case, the jury did not decide that he acted intentionally, or with any willfulness or malice.

The state court jury was not required to determine whether Debtor acted willfully and maliciously when it found that Debtor misappropriated Hudson & Muma's trade

8

secrets. Likewise, the jury's finding that Debtor was not liable for conversion or tortious interference does not mean that Debtor did not act "willfully and maliciously" when he misappropriated Hudson & Muma's trade secrets. The state court jury simply did not make, and was not required to make, that determination. Therefore, a genuine issue of material fact remains regarding whether or not Debtor acted "willfully and maliciously." Accordingly, Debtor's Motion for Summary Judgment is denied on this count.

As stated earlier, Hudson & Muma argues that the state court jury's finding that Debtor misappropriated trade secrets fulfills the requirements of Section 523(a)(6). The state court jury found that the customer accounts Debtor misappropriated were in fact trade secrets, and that he knew or had reason to know that he was acquiring the trade secrets by improper means. Hudson & Muma cites the case of *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) to support its position. In that case, the Plaintiff filed an adversary proceeding pursuant to Section 523(a)(6) alleging that the Defendant's patent infringement, which was litigated and determined in a state court action, was willful. That court found that collateral estoppel applied and that the Defendant's actions were willful and malicious. However, the facts of that case are distinguishable from those in this case. In that case, the state court specifically found that the Defendant had acted willfully. However, as noted, in this case the jury did not determine whether Debtor acted willfully or maliciously when he misappropriated Hudson & Muma's trade secrets. Accordingly, this Court must determine whether or not debtor acted willfully and maliciously and, therefore, Hudson & Muma's Motion for Summary Judgment is denied.


Return Premium Checks

Debtor argues that Hudson & Muma's claims relating to the return premium checks are barred by res judicata and/or collateral estoppel and the compulsory joinder rules under M.C.R. 2.203. Hudson & Muma argues that the issues relating to the return premium checks were not litigated or and were not adjudicated by the state court jury and thus, res judicata and collateral estoppel do not apply. Hudson & Muma further argues

9

that it was not required to join the return premium check claims in the state court action.

The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. "The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first case." *Adair v. State*, 470 Mich. 105, 121; 680 N.W.2d 386, 396 (2004). "Michigan has adopted a broad form of res judicata, which bars not only claims actually litigated in prior actions, but every claim arising out of the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Gose v. Monroe Auto Equipment Co.*, 409 Mich. 147, 160-63; 294 N.W.2d 165 (1980).

In this case, the issues relating to the return premium checks were not submitted to the state court jury because, between the time Hudson & Muma filed its complaint in the state court and the time of the state court trial, Debtor presented to the State of Michigan Department of Licensing and Regulation, Finance, and Insurance Bureau an admission that he had stolen or forged return premium checks totaling approximately $190,000, on the basis of which he entered into a Consent Order agreeing to repay the funds to the appropriate parties. Therefore, the claims relating to the return premium checks were not litigated in the state court action nor were they adjudicated in the state court case. Thus, neither res judicata nor collateral estoppel apply.

Michigan Court Rule 2.203 states:

In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

In this case, the claims regarding the return premium checks did not arise out of the transaction or occurrence that was the subject matter of the state court action. Therefore, Hudson & Muma was permitted, but not required, to join the claims regarding the return premium checks in the state court proceeding. Accordingly, Debtor's Motion for

Summary Judgment is denied with regard to this count.

**CONCLUSION**

For the foregoing reasons, both Motions for Summary Judgment are denied. The Court will be contemporaneously entering orders to that effect.

Signed on October 06, 2010

                              /s/ Walter Shapero
                         Walter Shapero
                         United States Bankruptcy Judge